# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GABBANELLI ACCORDIONS &
IMPORTS, L.L.C,

      Plaintiff,

          v.

ITALO-AMERICAN ACCORDION
MANUFACTURING CO., CESAR MUSIC
ENTERPRISE, INC., AL HAGEDORN
INDIVIDUALLY AND D/B/A MISSION
MUSIC, MASTER SOUND DI
CIUCCIOMEI MAXIMILIANO &
C. S.N.C., and DITTA GABBANELLI
UBALDO DI ELIO GABBANELLI,

      Defendants.

No. 02 C 4048
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Gabbanelli Accordions & Imports, L.L.C. sues for trademark infringement and false

advertising.  There were a number of defendants who settled but two are left:  Master Sound di

Ciucciomei Maximiliano & C. S.n.c. and Ditta Gabbanelli Ubaldo di Elio Gabbanelli.  As might

be inferred from the caption of the case, the lawsuit arises from a family dispute over the family

business of making and selling "Gabbanelli Accordions."  To avoid confusion, I refer to Plaintiff

as Accordions and to Defendants as Master Sound and Ubaldo (collectively "Defendants").  To

shorten this judgment, I simply state that the accordions are wildly colorful, heavily ornamental

and clearly distinctive–no one disputes that trademark and trade dress protection are fully

justified.  What is debated is the standing of the plaintiff to bring the case and some defenses

under the trademark law.

Accordions, I infer, is a wholesale seller of the instruments to retailers. It has others make the instruments it sells. For a time, Ubaldo was such a maker, and then later he was no longer commissioned to do so. In the mid to late 1990s when Ubaldo was no longer making instruments for Accordions, he started selling purported "Gabbanelli Accordions" (with certificates of authenticity) to Accordions' customers. This resulted in fewer sales for Accordions. As to this there is no attempt at disputation.

This lawsuit was filed on June 6, 2002. Since that time, the customary route to resolution has seldom been followed. Two individuals wrote a letter asking that the case be dismissed. The letter cannot be considered a motion to dismiss since it is filed on behalf of two Italian corporations, which can be represented here only by attorneys.[1] What Defendants did was to refuse, as is their right, to waive service. Service was then effected under the Hague Convention. During the not-very-short period this takes, Defendants filed suit in Italy seeking judgment that they, not Accordions, owned the U.S. trademark rights. Defendants then argued that the Italian lawsuit was filed first. But this is not so. Service was effected first in the Italian case, but it is the filing date that counts. *Illinois Blower, Inc. v. Deltak, L.L.C.*, 2004 WL 765187, at *2 (N.D. Ill. Apr. 7, 2004) ("most courts consider the act of filing, rather than service, as determinative under the first filed rule"); *see also Gold Eagle Co. v. Li*, 486 F.Supp. 201, 204 (N.D. Ill. 1980) (party who filed first entitled to litigate in that forum and be free from "the vexation of concurrent litigation"). There was also a claim that arbitration was mandatory but no defendant

---

[1]The letter is, in any event, a meritless attempt at dismissal. The case states a federal cause of action. Defendants conduct business in this District having sold its accordions to the other Defendants, retailers who operate in Chicago and other places in Cook County. Indeed, by failing to respond to the Request to Admit, Ubaldo and Master Sound concede they do business here.

sought arbitration, rather they invoked Italian judicial remedy which, unless rebutted, creates a

presumption of waiver of arbitration rights. *Cabinetree of Wisconsin, Inc. V. Kraftmaid*

*Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). There is no rebuttal.

This case is made simpler (to the detriment of Defendants) by the choice Defendants

made in responding (more precisely, not responding) to this lawsuit. In the letter asking for

dismissal, the individuals wrote, in essence, that (1) they did not believe American courts have

jurisdiction and do not accept jurisdiction; (2) that they think the Italian case had priority and

would resolve issues that were logically prior to the issues presented here; and (3) that the cost of

litigating in Italy was far less than the cost of litigating here and the defendant enterprises are

small. The letters specifically state that they are filed without representation of an American

attorney.

The author or authors of the letter were entitled to hold each and every one of these

views, but they did not present them properly to this or any court in the United States. What they

did was unilaterally ignore the case here. This led to their ignoring a request to admit certain

facts which are now deemed admitted. At the last minute, they seek to file declarations that are

inconsistent with that which was deemed admitted. A party to a lawsuit may not contradict its

own deposition with a later affidavit (and I do not even have a sworn affidavit here).[2] *Huey v.*

---

[2] The statements made by Elio Gabbanelli, Jr. are not notarized, or verified under oath or accompanied by a declaration that they are made under penalty of perjury of the laws of the United States. I cannot consider them. I tend, also, to agree with Accordion's argument that the "evidence" offered does not save defendants. *See Plaintiff Gabbanelli Accordions & Imports L.L.C. Objections and Reply to Ditta Gabbanelli Ubaldo Di Elio Gabbanelli Resp. To Plaintiff's Mot. for Summ. J.* at 5-13 (filed June, 21, 2007). I do not decide this question.

In contrast to this, I do not grant the motion to strike the declaration of Michael Gabbanelli. It responds only to a new issue raised, for the first time, in the defense response to the motion for summary judgment and refers to a document which had not been produced in discovery because nothing was produced by Defendants in discovery.

*United Parcel Service,* 165 F.3d 1084 (7th Cir. 1999).  To the extent it is in my power to allow

them to withdraw their admissions,  I refuse them leave to do so and deny their motion to do so.

My refusal is based upon their utter refusal to engage the court on any issue.  I assume it

is true that many of the documents and witnesses they need to support their defense here are

located in Italy and this could represent some burden to them.  But it rests within my authority to

relieve them of that burden by requiring Plaintiff to do its discovery in Italy.  Testimony could be

preserved by electronically recorded depositions and the cost of making true copies of documents

could have been imposed on Plaintiff.  There was, in short, a remedy for many of the problems

about which they complained.  They never asked for such a remedy.  Instead they ignored this

proceeding, admitted facts which establish jurisdiction and proceeded with a very protracted

litigation in Italy which may, or may not, be within a half-year or more of decision.  And in the

end, they have demonstrated, so far, that they do have the economic wherewithal to defend this

case in the United States.

It is true that, in the hope that the Italian litigation would possibly resolve some of the

questions at issue here, I stayed some aspects of this proceeding in the hope that this would

occur.  I have now come to the belief that the order staying some (but not all) aspects of the

proceeding and the process of discovery was a mistake on my part.  What Defendants here have

done is to ignore the most minimal obligations they have under our law despite their sales of

accordions in this District.  They have derived enough profit from the delay as it is.

On the merits, Defendants have admitted infringement and offer no evidence to counter

the incidents of actual confusion about the source of accordions (in the form of persons seeking

to have Plaintiff repair Defendants' accordions).  The similarity of marks is patent, the products

are identical, and thus the customers are identical. The way in which the products are acquired is identical, and the majority of the customers are unable to distinguish between the infringing product and Plaintiff's product. A reasonable finder of fact could reach no conclusion other than Defendants intended to pass off their product as Plaintiff's product and that the net effect of their conduct was to falsely designate the origin of the product and to falsely advertise what they were selling. The admitted facts and the evidence which supports them leaves no room to doubt that unfair competition has been perpetrated and all the alleged conduct was the result of express agreement between Defendants, i.e., by a civil conspiracy.

The reason that there is no doubt about these facts is that the only defense urged is that Defendants had the right to do all these things because Plaintiff had no enforceable rights (against Defendants) with respect to the Gabbanelli Marks and Trade Dress. In short, Defendants claim it is not a tort because we had the legal right to do it.

Plaintiff relies on its ownership of federal registrations for the Gabbanelli Marks which is *prima facie* evidence of its exclusive right to use them with accordions. Under the law, continued use of the trademark registration for five years and for which a 15 U.S.C. § 1065 affidavit has been filed renders the registration incontestable. As for trade dress, Plaintiff's use of an unregistered trade dress is strong evidence of secondary meaning. *Thomas & Betts Corp. v. Panduit Corp.* 138 F.3d 277 (7th Cir. 1998).[3] It is undisputed that the use has been exclusive save

---

[3]There might have been a dispute on priority of use in this case, that is, that Defendants used the mark in commerce before Plaintiff, but here again the defendants have offered only the declarations that I refuse to consider because they contradict prior admissions and because they are not made under penalty of perjury.

for the Defendants who have been sued. The elements of the trade dress are clearly non-functional. All of this is formally admitted by Defendants.

There is no reasonable argument on this record that Plaintiff does not have exclusive rights to the trade mark and trade dress in the United States. What the Defendants seem to say is that Plaintiff never had the exclusive right (or by contract in Italy, surrendered that right) to North American use of the trade mark and trade dress. This may, or may not, be the question before the Italian court and, if the Court of Ancona decides for the Defendants on this question, the Defendants may be able to seek enforcement of that judgment in American courts. But they do not have that judgment now, and the judgment they do get may not be in their favor. They have not provided any admissible evidence here that impinges on Plaintiff's incontestable United States trade mark and trade dress. It is not even clear that control of the mark (as opposed to proceeds from control and use of the mark and trade dress) would ever be in the hands of Defendants even if they were to prevail in Italy.[4]

---

[4] There is some briefing on the exact scope of the Italian proceedings. It is conceded by plaintiff that there was a 1999 Agreement which sought to resolve the family dispute and a method for resolving some disputes under that agreement. Both sides allege breaches of that agreement which might render it unenforceable. That is a matter for the Italian court. The Agreement did provide for arbitration and one apparently was invoked, but a complete panel of arbitrators was never appointed. There is no dispute that Defendants did seek judicial remedies on several occasions in Italy despite the arbitration agreement. While the scope of the Italian proceeding may be broader than the parties originally understood when a stay of these proceedings were stayed in part, it seems clear now that the premise of the stay–that the Italian court would resolve the question of ownership of the marks and trade dress–is incorrect. The Italian court might well never address the question of who has rights in the intellectual property at issue here. It is ironic that Defendants have, for a while, asserted how broad the issues are in the Court of Ancona; the very broadness of the issues and the many ways the case can be resolved in Italy is a good reason not to wait for the ruling in Ancona.

Summary judgment as to liability is granted in favor of Plaintiff and against Defendants.

Summary judgment with respect to damages is awarded in favor of Plaintiff in the amount of $151,200 for lost profits.[5] I award statutory damages ($500) per accordion or $216,000. I award attorneys' fees of $147,000 because, in this case, the litigation conduct of the defendants imposed unjustified costs upon Plaintiff, to say nothing of unjustified burdens upon the court and the legal process for which, at this stage, I decline to award sanctions. I award costs in the amount of $10,481.00. By separate order, I am entering an injunction preventing Defendants' use of the trade marks and trade dress. The merits of the claim have been decided in Plaintiff's favor. The damage is, in law, irreparable and the public interest favors issuance of an injunction.

I will also issue a separate order of judgment.

ENTER:

James B. Zagel
United States District Judge

DATE: February 8, 2008

---

[5]This is based upon the uncontested number of accordions, 432, sold to the retailers or distributors who were the other defendants in this case multiplied by the average profit realized by Plaintiff during the applicable period.